## Torhan Will.

Argued September 26, 1960. Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and Eagen, JJ.

*Myron E. Rowley,* with him *Rowley, Smith & Rowley,* for appellant.

*John W. Cost,* with him *Eugene A. Caputo,* for appellee.

Opinion Per Curiam, November 15, 1960:

This appeal involves the propriety of the action of the Orphans' Court of Beaver County in setting aside the probate of a will executed by mark.

Anna Torhan, a resident of Ambridge Borough, Beaver County, died April 4, 1959. Decedent had been married twice: by her first marriage to a man named Shevchik she had five children and by her second marriage to Charles Torhan she had four children. Charles Torhan, at the time of his marriage to decedent, was a widower with six children.[1]

The alleged will was dated January 4, 1954 and purported to be the last testamentary disposition of both the decedent and Charles Torhan, her husband.

---

[1] Under the disputed will decedent's entire estate was given to the surviving children of the second marriage.

Charles Torhan, who predeceased decedent, did not execute the instrument and decedent's execution of the instrument was by mark. After decedent's death a caveat was filed against the probate of this instrument; after hearing, the Register of Wills of Beaver County admitted the instrument to probate as decedent's last will and testament. An appeal from this action of the register of wills was taken to the Orphans' Court of Beaver County upon the ground, inter alia, that the will was not executed in compliance with section 2(2) of the Wills Act of 1947, P. L. 89, 20 PS §180.2, and Orphans' Court sustained the appeal and set aside the probate of the will. From that decree this appeal was taken.

The decree of the court below is affirmed on the following excerpts from Judge REED'S opinion: "The applicable provision of Section 2 of the Wills Act of 1947 reads as follows: '(2) Signature by mark. If the testator is unable to sign his name for any reason, a will to which he makes his mark and to which his name is subscribed in his presence before or after he makes his mark, shall be as valid as though he had signed his name thereto: Provided, He makes his mark in the presence of two witnesses who sign their names to the will in his presence.'

"The latest reported case of our Supreme Court again interpreting this section of the act with reference to the execution of wills by mark is Rhodes Will, 399 Pa. 476, decided May 4, 1960, wherein it is held that to comply with the statutory provisions of Section 2 the proponent of the will must prove (479): '(1) the inability of the testator to sign his name for any reason; (2) that the mark was made by the testator; (3) that, either before or after the testator made his mark, his name was subscribed; (4) that the subscription of testator's name took place in his presence;

(5) that when testator made his mark two witnesses were present; (6) that these witnesses signed their names to the will; (7) that the subscription of the witnesses' names took place in the testator's presence. Section 2(2) sets forth what must be proven to validate a will executed by mark.'

"In that opinion the court further pointed out: 'Section 4 of the Wills Act of 1947, supra, sets forth how the requisite facts under Section 2(2) must be proven. Section 4 provides: "(a) General rule . . ., no will shall be valid unless proved by the oaths or affirmations of two competent witnesses". . . . This section sets forth in statutory form the well-established and salutary rule in the law of wills known as the "two witness rule": Asay v. Hoover, 5 Pa. 21, 33; Grabill v. Barr, 5 Pa. 441, 445; Kelly's Estate, 306 Pa. 551, 160 A. 454; James' Estate, 329 Pa. 273, 198 A. 4; Orlady's Estate, 336 Pa. 369, 9 A. 2d 539; Morris Will, 349 Pa. 387, 37 A. 2d 506; Cohen Will, 356 Pa. 161, 51 A. 2d 704; Walkiewicz Will, 392 Pa. 310, 140 A. 2d 589. Chief Justice GIBSON in Hock v. Hock, 6 S. & R. 47 succinctly stated this rule: "Proof of execution must be made by two witnesses, each of whom must separately depose to all the facts necessary to complete the chain of evidence, so that no link in it may depend on the credibility of but one". More recently the rule was concisely stated by Mr. Justice (later Chief Justice) STERN in James' Estate, supra (p. 275) : "There must be a strict compliance with these statutory provisions, and a will is not valid unless executed precisely in accordance therewith. If executed by mark, it is not a lawful instrument unless testator's name was subscribed in his presence and by his direction and authority: Hunter's Estate, 328 Pa. 484 . . . But, . . . the facts that such direction was given and that testator's name was subscribed in his presence must be proved,

under the act, by two or more competent witnesses, each of whose testimony must be complete, independently of the other's, as to the existence of those circumstances and the performance of those acts which the statute requires to exist and to be done as conditions essential to the validity of the will." As a safeguard against possible fraud in the execution of wills the "two witnesses rule" needs no defense at this late date.'

" 'While the validity of a will requires proof from two witnesses, such witnesses may be non-subscribing as well as subscribing provided their competence be established: Carson's Appeal, 59 Pa. 493; Novicki v. O'Mara, 280 Pa. 411, 124 A. 672; Morris Will, supra; Cohen Will, supra; Walkiewicz' Will, supra.'

"The proof of execution of the will by mark rested on the testimony of Zenobia Jurkowski, the scrivener of the will, and Steve Torhan, son of the decedent, beneficiary under the will of a one-third share of the estate, and other corroborating testimony. The testimony of these two witnesses is diametrically opposed. The decedent understood and spoke the Polish language and was unable to sign her name; it is not disputed that decedent affixed her mark to the will after her name was subscribed thereto by Miss Jurkowski; it is not disputed that both Miss Jurkowski and Steve Torhan witnessed the will. The variance in the testimony is as to the time of its execution, the witnessing thereof and the place and manner in which it was witnessed. Miss Jurkowski testified that sometime in the afternoon of January 4, 1954, the decedent, with one or two of her daughters, came to her place of business, she being a justice of the peace and maintaining an office in the Borough of Ambridge; that decedent discussed with her, in the Polish language, the contents of the will and thereafter she typed the will; after it

was typed she subscribed the name 'Anna Torhan' to the will, Mrs. Torhan then made her mark in her presence and she, Miss Jurkowski, then witnessed the making of her mark. She further testified that Steve Torhan did not accompany his mother to her office, he was not present when the will was discussed, he was not present when Mrs. Torhan affixed her 'X' or when she, Miss Jurkowski, witnessed the will by affixing her signature thereto. Steve Torhan testified that he accompanied his mother to Miss Jurkowski's office, arriving there between ten and eleven a.m., on January 4, 1954; that when they arrived a clerk, employed by Miss Jurkowski, advised them they would have to wait she being otherwise occupied; thereafter he, together with his mother, discussed the preparation and contents of the will with Miss Jurkowski in her office. He further testified that subsequent to the discussion the will was typed either by Miss Jurkowski or her clerk and then Miss Jurkowski subscribed his mother's name to the will; his mother then affixed her 'X' mark, and immediately thereafter he and Miss Jurkowski witnessed the will. He further testified, that Miss Jurkowski, after witnessing the will, affixed her notary public seal thereto. Miss Jurkowski denied affixing the seal to the will and an examination thereof shows that no such seal was affixed. She also denied having any clerk in her employment in January of 1954. *We find Miss Jurkowski's testimony to be credible.** In corroboration of her testimony, Charles Shevchik, son of the decedent, testified that on Sunday afternoon, January 10, 1954, his mother having had a birthday on January 7th, he had gone to her home where he was told about the will and his mother showed it to him; while he was examining it his brother, Steve Torhan, walked in, and when he made inquiry of him about the

---

* Emphasis supplied.

will Steve told him that his mother and his sister, Helen, had brought it home for him to sign as a witness and that he did so sign as a witness.

"Without further elaboration on the contradictions in the testimony, it is immediately apparent that the proof required of the proponents of the will has not been sustained in that it has not been established by the evidence of two competent witnesses that the testator made her mark in the presence of two witnesses who signed their names in her presence and in the presence of each other, or that her name was subscribed to the will in the presence of two witnesses. The contrary testimony of Miss Jurkowski and Steve Torhan constitutes proof at variance with the rules as set forth in Rhodes Will, supra."

Decree affirmed.